Reese, J.
delivered the opinion of the court.
In 1823, Carlisle W. Knight, the father of complainant, *102 intermarried with the daughter of Hugh Shaw; and sometime in the following year, certain negro slaves were placed in the possession of the said Carlisle W. Knight, by Hugh Shaw, the father-in-law. In 1828, the wife of Knight, the mother of complainant, died; and, very soon after, Knight married a second4wife. Upon the occurrence of these events, a dispute sprang up between Hugh Shaw and Carlisle W. Knight, as to the title of these slaves, which turned upon the disputed question, whether the slaves had been placed in the hands of Knight as a gift, or as a loan; and the parties were, about to be involved in a litigation upon the matter, when a compromise was made between them, to the effect that Shaw should convey a negro boy to Knight, that Knight should convey a negro woman to Shaw, and that Shaw and wife and Knight should convey a negro woman, Hannah, and her two children, to the complainant; and they did, accordingly, by a bill of sale, dated the 14th March, 1829, convey the said woman and children to the complainant. This bill of sale, although attested by two subscribing witnesses,was proved by but one of them, and the registration which took place thereon was of course invalid.' The deed, in the granting portion of it, and in its habendum, is an absolute and unconditional conveyance, m prsesenti, to the complainant, of the entire interest, claim and title to the slaves in question. But after these terms, so vesting the title, there is this statement: “Said negroes are to remain in the possession of the said Carlisle W. Knight, until the said Bolivar arrives at '21 years of age.” But there is no statement that they were to remain in his possession for his use and benefit. He did, for nine or ten years after the deed, continue to hold the negroes for his son. About 1838 or 1839, his creditors, who were not such at the date of the deed, obtained judgment against him, and by his connivance and concurrence, and for the protectiori of his own property, execution.upon said judgments were caused to be levied upon said slaves, and the defendants in this bill became purchasers thereof.
This bill is brought to recover the possession of said slaves and their hire. The testimony is unnecessarily voluminous; it establishes, however, that the slaves, after the bill of sale, *103 were held and claimed by Carlisle W. Knight, the father, for Bolivar W., the son: that the execution creditors, at the sale, where the defendants became purchasers, were not creditors at the date of the bill of sale, and that the bill of sale was made from motives, and under circumstances, repelling the idea of intentional fraud in the transaction. The questions of law, which have been discussed, chiefly in relation to the statute of limitations, in application to the facts upon the record, present but little difficulty.
Whatever may be held in North Carolina, in the cases to which we have been referred — where the settled principle and system of adjudication in relation to the statute of limitations as affecting slave property, is, that the statute operates to bar the remedy, but not to vest the right in the adverse possessor — can have but little influence here, where the settled principle and system of adjudication, since the cáse of Miles vs. Cagle,- has been, in relation to such property, that the operation of the statute upon the adverse possession, is the same with that of the first section of the act of 1819, in relation to land. It not only bars the remedy of the opposing claimants, but it transfers and vests the title, where the possession has been!
This general principle has been established in many cases; it has been so held, repeatedly, even during the present term; and the decision in 1st Hump. 345, 353, if it be supposed to have been against it, cannot unsettle or shake it. The possession, then, of the father, in this case, is well proved to have been held for the son; and the efficacy of that possession in favor of the title of the son, is not diminished by the fact, that the deed itself contemplated that the possession should be so held for the son; for such is the construction we give to the deed. The bill of sale, because not properly registered, fails, indeed, by its own proper vigor, to confer a good title, but the possession held for the son, under it, is certainly as effective in behalf of the son, as if the gift had been verbal, and the possession held under, or by reason of such invalid gift. And possession of this character has been often held, and in several cases at this term, to confer by force of the statute a good title. And a title which the statute has made *104 good, cannot be rendered invalid, or ineffectual, because creditors may subsequently obtain judgments, and levy upon the property. This would contravene the long and well settled principle of our adjudications on the subject of the statute of limitations.
The chancellor having taken the above view of this case, and having decreed in behalf the complainants, we affirm his decree, with costs.